# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| SHELLY FOUCH, ) | |
| ) | |
| Plaintiff, ) | CIVIL ACTION |
| v. ) | |
| ) | No. 08-2325-KHV |
| SOUTHWESTERN BELL TELEPHONE ) | |
| CO., ) | |
| ) | |
| Defendant. ) | |
| ) | |

## MEMORANDUM AND ORDER

Shelly Fouch brings suit against Southwestern Bell Telephone ("SWB") for retaliatory discharge in violation of the Family and Medical Leave Act, 29 U.S.C. § 2611 et seq. ("FMLA"). This matter is before the Court on Defendant's Motion For Summary Judgment (Doc. #43) filed September 21, 2009. For reasons stated below, the Court overrules defendant's motion.

## Legal Standards

Summary judgment is appropriate if the pleadings, depositions, answers to interrogatories and admissions on file, together with any affidavits, show no genuine issue as to any material fact and the moving party is entitled to a judgment as a matter of law. See Fed.R.Civ.P. 56(c); accord Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247 (1986); Vitkus v. Beatrice Co., 11 F.3d 1535, 1538-39 (10th Cir. 1993). A factual dispute is "material" only if it "might affect the outcome of the suit under the governing law." Anderson, 477 U.S. at 248. A "genuine" factual dispute requires more than a mere scintilla of evidence. Id. at 252.

The moving party bears the initial burden of showing the absence of any genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986); Hicks v. City of Watonga, 942 F.2d 737, 743 (10th Cir. 1991). Once the moving party meets this burden, the burden shifts to the

nonmoving party to demonstrate that genuine issues remain for trial as to those dispositive matters for which it carries the burden of proof. Applied Genetics Int'l, Inc. v. First Affiliated Sec., Inc., 912 F.2d 1238, 1241 (10th Cir. 1990); see also Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586-87 (1986); Bacchus Indus., Inc. v. Arvin Indus., Inc., 939 F.2d 887, 891 (10th Cir. 1991). The nonmoving party may not rest on its pleadings but must set forth specific facts. Applied Genetics, 912 F.2d at 1241.

The Court must view the record in a light most favorable to the party opposing the motion for summary judgment. Deepwater Invs., Ltd. v. Jackson Hole Ski Corp., 938 F.2d 1105, 1110 (10th Cir. 1991). Summary judgment may be granted if the nonmoving party's evidence is merely colorable or is not significantly probative. Anderson, 477 U.S. at 250-51. In a response to a motion for summary judgment, a party cannot rely on ignorance of facts, on speculation, or on suspicion, and may not escape summary judgment in the mere hope that something will turn up at trial. Conaway v. Smith, 853 F.2d 789, 794 (10th Cir. 1988). Essentially, the inquiry is "whether the evidence presents a sufficient disagreement to require submission to the jury or whether it is so one-sided that one party must prevail as a matter of law." Anderson, 477 U.S. at 251-52.

**Factual Background**

The following facts are either uncontroverted or, where controverted, construed in the light most favorable to plaintiff:

On November 29, 1999, Shelly Fouch began employment with Southwestern Bell as a customer service representative.

In her position as a customer service representative, Fouch's duties included receiving, screening, testing, analyzing and dispatching trouble reports. SWB also required that Fouch

familiarize herself with and abide by its work rules and policies. Under those policies, customer service representatives must give customers a professional and courteous experience. All calls must be answered promptly and failure to pick up a call and promptly answer the customer constitutes gross discourtesy, whether deliberate or unintentional, and will result in employee discipline. SWB mandates that customers never be placed on hold unless absolutely necessary and that a customer should never be asked to hold for a non-business matter. SWB policy also prohibits customer service representatives from using inappropriate language or slang when on duty, as they may be overheard at another position.

SWB provides employees a telephone number that may be given out for personal emergency situations. Personal calls should be placed from telephones in break rooms and employees are not allowed to use telephones in conference rooms or vacant offices for personal calls.

In work areas, employees are not allowed to answer or originate calls via personal cell phones. E-mail may not be accessed for personal use of any kind, including schedule changes, requests for E-time and notes to union representatives.

If an employee violates SWB policy, he or she is subject to company discipline, which has three levels. The first is a performance notice, the second is a written reminder and the third is decision making leave.[1] The discipline policy allows SWB to skip steps and does not require that each level of discipline be imposed before it can progress to the next level. Decision making leave is the last step prior to termination. If an employee violates SWB policies or fails to satisfy SWB expectations within the 12 months of starting on decision making leave, SWB may take further

---

[1] Decision making leave does not necessarily require that the employee be absent from the workplace. SWB uses the term to describe the final step of review before terminating an employee.

disciplinary action up to and including dismissal.

SWB had a strategic plan of dismissing workers who requested FMLA leave time. Gary Casper, a former SWB manager, states that he and other "AT&T managers were encouraged to find indirect methods of eliminating customer service representatives who were utilizing FMLA leave."[2] See Declaration Of Gary Casper attached as Ex. 1 to Plaintiff's Response To Defendant's Motion For Summary Judgment (Doc. #46) filed October 20, 2009. Casper furthers states that "AT&T would encourage management to reduce absenteeism even if the absenteeism was covered by FMLA" and that "[m]anagers were encouraged to pay closer attention to employees who took FMLA leave in order to find opportunities to bring disciplinary action against them that would be used as a basis for termination." Id. Guadalupe Alexander, a former customer service representative with SWB, states that during her employment in 2006, she attended several employee group meetings during which "employees were specifically told by Floyd Tolman that they should talk to other employees who were taking FMLA leave in order to discourage them from continuing to do so." See Declaration Of Guadalupe Alexander attached as Ex. 2 to Plaintiff's Response To Defendant's Motion For Summary Judgment (Doc. #46) filed October 20, 2009. Alexander also states that following a hysterectomy, SWB contacted her physician multiple times in an attempt to invalidate her FMLA claims. Id.

SWB granted FMLA leave to Fouch on more than 14 occasions over 33 months: from September 30 to October 4, 2003; from May 26 to May 29, 2004; from November 30 to December 4, 2004; from February 7 to February 9, 2005; from May 20 to May 26, 2005; from May 31 to June 2, 2005; from June 24 to June 26, 2005; from September 13 to September 17, 2005; from October

---

[2] On November 18, 2005, Southwestern Bell Telephone Company bought AT&T Corp. and renamed it AT&T Inc.

17 to October 18, 2005; from December 21 to December 23, 2005; January 21, 2006; January 23, 2006; from March 29 to April 1, 2006; from April 5 to April 10, 2006; and from June 7 to June 13, 2006. SWB never terminated or disciplined Fouch for taking these leaves.

On five separate occasions following FMLA leave between September 19, 2005 and June 14, 2006, Fouch's supervisors informed her that "she is needed at work everyday and on time as scheduled . . . when she is not here her work load is shifted to others including over time."

On October 4, 2000, SWB placed Fouch on written reminder for various reasons including representing it in a negative manner that it considered gross abuse. On April 1, 2002, SWB placed Fouch on a performance notice for customer abuse for blurting out "Jesus Christ" while on a customer call. On July 5, 2005, SWB placed Fouch on a performance improvement plan for safety infractions including (but not limited to) sitting on her foot, standing up with her knee on a chair and having her head stretched across the aisle next to her work station. On August 5, 2005, SWB placed Fouch on a written reminder for internet abuse. On August 31, 2005, SWB placed Fouch on decision making leave for customer mistreatment.[3] The decision making leave was in effect until August 31, 2006. The decision making leave documentation emphasized "the extremely serious nature" of the leave and informed Fouch that her job was in jeopardy. See Declaration of Floyd Tolman, attached as Ex. H, ¶12; September 2005 Notice to Defendant's Memorandum In Support Of Motion For Summary Judgment (Doc. #44) filed September 21, 2009. Area manager Floyd Tolman discussed this discipline with Fouch and told her that if she used foul language on the floor, misused company time or equipment or had further customer abuse, she would be disciplined up to and including

---

[3] In September of 2005, Fouch claimed that SWB discriminated against her because her husband was black. Notwithstanding this complaint, Fouch is not pursuing a race discrimination claim in this case.

termination. Id. Moreover, Tolman told Fouch that the decision making leave was the final level of discipline prior to termination.

On June 2, 2006, a supervisor saw Fouch conduct personal business on her cell phone during scheduled work time while a customer was placed on hold. Fouch knew that under SWB policy, she could not use her cell phone for personal calls while on the work floor, but she took the personal call while her customer was on hold. Before SWB concluded its investigation into the incident, however, Fouch requested FMLA leave from June 7 to June 13, 2006. SWB granted Fouch's FMLA leave request.

When Fouch returned from FMLA leave, she informed SWB that on June 2, 2006, she had taken a personal call which was an emergency that took precedence over her customer. On July 27, 2006, SWB terminated Fouch's employment. Kathleen Rivera (Performance Manager), Tolman (Area Manager) and Corrine McCray (Director) made the decision to terminate Fouch's employment. Following her termination, Fouch claimed that SWB had terminated her because of age.[4] In her investigation questionnaire to the Kansas Human Rights Commission, Fouch stated the following concerning the phone call she took on June 2, 2006:

> a coworker Jackie Cobb called me back on my cell phone because I had left her a message @ about 220PM to call and check on April because @ 2PM April had came over to me and Adriene and said her husband was making her leave work and he was threatening to kill her.

See KHRC Investigation Questionnaire, attached as Ex. M to Defendant's Memorandum In Support Of Motion For Summary Judgment (Doc. #44).

**Analysis**

---

[4] Fouch was 34 years old at the time of her termination. Nonetheless, she is not pursuing an age discrimination claim in this case.

Fouch claims that SWB terminated her employment in retaliation for her taking FMLA medical leave. SWB asserts that it is entitled to summary judgment because Fouch cannot show that it willfully retaliated against her. Specifically, SWB contends that it had a legitimate non-discriminatory reason for termination and that Fouch cannot establish that its stated reason for termination is pretextual. Fouch argues that she has demonstrated a genuine issue of material fact whether SWB terminated her for using FMLA leave.

**I.   Evidence Of Pretext**

Fouch claims that SWB terminated her employment because she exercised rights under the FMLA. See 29 U.S.C. § 2615(a). The burden-shifting framework of McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802-05 (1973), and Tex. Dep't of Cmty. Affairs v. Burdine, 450 U.S. 248, 252-56 (1981), applies to such a claim. See Metzler v. Fed. Home Loan Bank of Topeka, 464 F.3d 1164, 1170 (10th Cir. 2006). Plaintiff initially bears the burden of production to establish a prima facie case of discrimination. McDonnell Douglas, 411 U.S. at 802. If plaintiff establishes a prima facie case, the burden shifts to defendant to articulate a facially nondiscriminatory reason for its actions. See Reynolds v. Sch. Dist. No. 1, 69 F.3d 1523, 1533 (10th Cir. 1995). If defendant articulates a legitimate nondiscriminatory reason, the burden shifts back to plaintiff to present evidence from which a reasonable jury might conclude that defendant's proffered reason is pretextual, that is, "unworthy of belief." Beaird v. Seagate Tech., Inc., 145 F.3d 1159, 1165 (10th Cir. 1998) (quoting Randle v. City of Aurora, 69 F.3d 441, 451 (10th Cir. 1995)).

    **A.   Prima Facie Case**

To establish a prima facie case of discrimination or retaliation under 29 U.S.C. § 2615(a)(2), plaintiff must show that (1) she availed herself of a protected right under the FMLA; (2) she was

adversely affected by an employment decision; and (3) there exists a causal connection between the two actions.  See Morgan v. Hilti, Inc., 108 F.3d 1319, 1325 (10th Cir. 1997); accord Hodgens v. Gen. Dynamics Corp., 144 F.3d 151, 161 (1st Cir. 1998).  Defendant does not contest that plaintiff's disability leave qualifies as a protected right under the FMLA or that she was adversely affected by SWB's decision to terminate her employment.  Defendant contends, however, that plaintiff has not shown a causal connection between her use of FMLA leave and her termination.

SWB disciplined Fouch in both 2001 and 2002, before she ever requested or took FMLA leave.  Fouch received no further discipline until July of 2005, after she had requested and received FMLA leave seven times.  After starting on decision making leave on August 31, 2005, Fouch took FMLA leave from September 13 to September 17, 2005.  Fouch requested and received FMLA leave on six more occasions before SWB disciplined her for answering her cell phone on June 2, 2006.  Fouch's last FMLA leave before the cell phone incident on June 2, 2006, was April 5 through April 10 of 2006.  After the cell phone incident, Fouch again took FMLA leave from June 7 through June 13, 2006.  SWB terminated her employment on July 27, 2006, less than six weeks after her last FMLA leave.  SWB claims that during this six-week period, it was conducting an internal investigation into the incident on June 2.[5]

Fouch argues that given the timing of events, the record supports an inference of causation. Viewing the record in the light most favorable to plaintiff, it appears that SWB terminated her employment roughly six weeks after plaintiff returned from her last FMLA leave.  Six weeks is a short enough time period to support an inference of causation between FMLA leave and adverse action.  See Doebele v. Sprint Corp., 157 F. Supp. 2d 1191, 1216 (D. Kan. 2001) ("Doebele I") (six

---

[5] SWB has not supported this claim with any evidence of an investigation.

week period between FMLA leave and termination supported inference of discrimination); Marx v. Schnuck Markets, Inc., 76 F.3d 324, 329 (10th Cir. 1996) (one month between complaint and discipline supported inference of discrimination); Ramirez v. Okla. Dept. of Mental Health, 41 F.3d 584, 596 (10th Cir. 1994) (one month supports inference). Under these facts, plaintiff has demonstrated a prima facie case of retaliation.

**B.     Pretext**

Defendant advances a legitimate, non-retaliatory reason for terminating Fouch's employment, namely numerous violations of company policy. Specifically, SWB points to the five disciplinary events in Fouch's record, including placement on decision making leave, that occurred prior to the dismissal for violation of SWB policy on June 2, 2006. Since defendant advances facially legitimate reasons for their actions, plaintiff may not rest on her prima facie case but must offer evidence that defendant's reason is a pretext for discrimination. See Doebele I, 157 F. Supp. 2d at 1216; Anderson v. Coors Brewing Co., 181 F.3d 1171, 1179 (10th Cir. 1999); Conner v. Schnuck Markets, Inc., 121 F.3d 1390, 1396 (10th Cir. 1997). Close temporal proximity is a factor in showing pretext, yet is not alone sufficient to defeat summary judgment. Annett v. University of Kansas, 371 F.3d 1233, 1240 (10th Cir. 2004). Timing is not necessarily enough to support an inference of pretext. See Selenke v. Med. Imaging of Colo., 248 F.3d 1249, 1260 (10th Cir. 2001).

Plaintiff can present a variety of forms of evidence to establish that defendant's stated reasons are pretextual. See Doebele I, 157 F. Supp. 2d at 1216 (citing Kendrick v. Penske Trans. Servs., Inc., 220 F.3d 1220, 1230 (10th Cir. 2000) (plaintiff may not be forced to pursue any particular means of demonstrating that defendant's stated reasons are pretextual). Pretext may be shown by a variety of evidence and no one type of evidence is required. Id. Failure to present probative evidence that

plaintiff was treated differently than those similarly situated may permit the grant of summary judgment. Id. However, this assessment must be made by adding up the differences and similarities in light of all the evidence of pretext to determine whether plaintiff has created a fact issue on the matter of pretext. Id. Where plaintiff alleges retaliatory discharge for the exercise of rights under the FMLA, plaintiff could can defeat summary judgment by direct and circumstantial evidence of retaliatory motive. In Doeble v. Sprint Corp., 342 F.3d 1117, 1138 (10th Cir. 2003) ("Doeble II"), plaintiff's direct evidence included testimony that plaintiff's supervisors "complained that due to her absences, most of which constituted valid FMLA leave, her workload had to be distributed among other employees." Id. Plaintiff's circumstantial evidence included proof of disturbing procedural irregularities in prior warnings to plaintiff and testimony that documentation of plaintiff's discipline was merely paperwork created "in an attempt to justify a decision already made." Id.

Here, Fouch has produced evidence that she received notices similar to those which plaintiff received in Doebele. On five separate occasions following FMLA leave, Fouch received notices that she was needed to work every day and that when she was not there, her work load was shifted to others including overtime.[6] In addition, Fouch presents the affidavits of Casper and Alexander that SWB not only had a policy of discouraging FMLA leave, but that Tolman – who participated in the decision to terminate Fouch's employment – specifically told employees that they should talk to other employees who were taking FMLA leave in order to discourage them from continuing to do

---

[6] SWB argues that these messages are not material because they were made by individuals who were not involved in the decision to terminate Fouch's employment. See Cone v. Longmont United Hosp. Ass'n, 14 F.3d 526, 531 (10th Cir. 1994). The Court notes that similar statements which the Tenth Circuit considered pretextual in Doebele II were made by "supervisors" and not necessarily by those who made the decision to terminate the employee. See Doebele II, 342 F.3d at 1137.

-10-

so.⁷

Here, Tolman made at least one statement about discouraging FMLA leave. In addition, two of Fouch's supervisors repeatedly complained that when she was on FMLA leave, her work was reassigned to other employees. Viewed in conjunction with the proximity of Fouch's FMLA leave to her termination, this evidence creates a genuine issue of material fact whether SWB's stated reasons for terminating Fouch's employment were retaliatory.

**IT IS THEREFORE ORDERED** that Defendant's Motion For Summary Judgment (Doc. #43) filed September 21, 2009 be and hereby is **OVERRULED**.

Dated this 4th day of January, 2010 at Kansas City, Kansas.

                                      s/ Kathryn H. Vratil
                                      Kathryn H. Vratil
                                      United States District Judge

---

⁷ SWB argues that Casper's statements are inadmissable hearsay. See Defendant's Reply In Support Of Their Motion For Summary Judgment (Doc. #52) filed November 23, 2009 at 19. While the Tenth Circuit has held that a court may not consider hearsay evidence in affidavits submitted in support of or in opposition to summary judgment, see Young v. Dillon Cos., Inc., 468 F.3d 1243, 1252 (10th Cir. 2006), Casper's statements are not hearsay. In Young, the Tenth Circuit held that an affiant's statement were hearsay because they relied on statements by a supervisor to persons other than the affiant. Here, Casper's statements pertain to comments by supervisors directly to him. Casper's statements rely not on hearsay, but rather on conversations he personally had with SWB management.

SWB also argues that Casper and Alexander's statements are conclusory and lack the necessary foundation to be considered admissible evidence. The Court disagrees and finds that plaintiff has offered sufficient foundation to support an inference that SWB not only had a policy of discouraging FMLA leave, but that at least one supervisor who was responsible for terminating Fouch's employment made statements to this affect.